| | |
|---|---|
| UNITED STATES BANKRUTCY COURT<br>EASTERN DISTRICT OF NEW YORK | Hearing Date: March 6, 2024<br>Hearing Time: 10:30 am |

-------------------------------------------------------

In re:

1777 HOMES LLC,

                 Debtor(s),

Chapter 11
Case No.: 1-23-42367-jmm
Honorable Jil Mazer-Marino

----------------------------------------------------

## NOTICE OF HEARING ON SECURED CREDITOR'S PLAN OBJECTION AND MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

**PLEASE TAKE NOTICE** that a hearing shall be held on March 6, 2024 at 10:30 A.M. on the motion filed by Sharestates Investments DACL, LLC (the "Movant"), by the undersigned attorneys, Objection to the Plan and for the entry of an order dismissing the Chapter 11 Case. The hearing shall be held before the Honorable Jil Mazer-Marino, United States Bankruptcy Judge, in Courtroom 352 at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800.

**PLEASE TAKE FURTHER NOTICE** that Judge Jil Mazer-Marino conducts hearings in person, telephonically and by videoconference. Those intending to appear at the hearing must register with eCourt Appearances no later than two (2) business days prior to the hearing. eCourt Appearances registration is required by both attorneys and non-attorney participants. Attorneys with a CM/ECF account may find the program under the "Utilities" menu after logging in to CM/ECF. Those without CM/ECF accounts may access the program on the website at [https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl](https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl). Once registered, eCourt Appearances will email the telephone number and/or video link for your hearing. You may register for hearings weeks in advance, but the telephone number and/or video link will not be emailed to you until 48 hours before the hearing date. Those registering with eCourt Appearances for hearings in less than 48 hours should allow up to 15 minutes after registration to receive the email with the telephone number and/or video link. Those unable to access eCourt Appearances must email Judge JIL MAZER-MARINO's Courtroom Deputy at [jmm_hearings@nyeb.uscourts.gov](mailto:jmm_hearings@nyeb.uscourts.gov) at

least two business days prior to the hearing. Your email must include your name, the case number(s), who you represent (if you are an attorney), hearing date, and phone number.

**PLEASE TAKE FURTHER NOTICE** that any objections or responses to the Motion must be in writing and filed electronically in accordance with General Order 559 (General Order 559 and the User's Manual for the Electronic Filing Case System can be found at [http://www.nyeb.uscourts.gov](http://www.nyeb.uscourts.gov), the official website for the Court), by registered users of the Court's case filing system, and by all other parties in interest, on a diskette, CD or DVD in Portable Document Format (.pdf), Word Perfect, or any other Windows-based word processing format, and served upon Movant's counsel at 3550 Engineering Drive, Suite 260, Peachtree Corners, GA 30092, with a courtesy copy provided to the Chambers of the Honorable JIL MAZER-MARINO, so as to be received no later than **seven** days prior to the hearing date of the Motion.

**PLEASE TAKE FURTHER NOTICE** that the hearing on the Motion may be adjourned from time to time as set forth in open Court, and without further notice.

Dated this 1st day of February, 2024.

                                             **McMichael Taylor Gray, LLC**

                                             By: */s/ Gregory Sanda*
                                             Gregory Sanda, Esq.
                                             NY Bar No. 4446340

                                             MCMICHAEL TAYLOR GRAY, LLC
                                             Attorney for Creditor
                                             3550 Engineering Drive, Suite 260
                                             Peachtree Corners, GA 30092
                                             Telephone: 404-474-7149
                                             Facsimile: 404-745-8121
                                             E-mail: gsanda@mtglaw.com
                                             MTG File No.: 22-001709-06

# **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Notice of Hearing was served via CM/ECF electronic service upon counsel for the Debtor and all parties in interest who have filed a notice of appearance, and as noted below.

**Via U.S. Mail**

1777 Homes LLC
1777 Nostrand Ave
Brooklyn, NY 1126-7133

Yoel Perl
1777 Nostrand Ave
Brooklyn, NY 1126-7133

Akiva J. Kurland, CPA
1761 Kimball St
Brooklyn, NY 11234-4303

Berkovitch & Bouskila PLLC
80 Broad St
New York, NY 10004-2209

Capital Cooling Inc.
5308 13th Ave
Brooklyn, NY 11219-3804

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Kleins Safety Inc.
454 Argyle Rd
Cedarhurst, NY 11516-1233

Jeremy Sussman, Esq.
U.S. Trustee
One Bowling Green
New York, NY 10004

Long Horn Corp
19 Dorothy St
Staten Island, Ny 10314-5007

MPI Plumbing Corp.
670 Myrtle Ave Ste 234
Brooklyn, NY 11205-3923

NYC Dep't of Finance
Legal Affairs
Collection Unit
375 Pearl St Apt 30
New York, NY 10038-1442

NYC Dept of Buildings
345 Adams St Fl 3
Brooklyn, NY 11201-3719

NYC Dept of Law
Attn: Bernadette Brennan, Esq.
100 Church St Rm 5-233
New York, NY 1007-2601

NYS Attorney General
28 Liberty St
New York, NY 1005-1400

NYC Dep't of Taxation
Bankruptcy/Special Procedure
PO Box 5300
Albany, NY 12205-0300

Richard Tolchin, Referee
2 Overlook Road, Apt. 182
White Plains, NY 10605-2451

U.S. Small Business Administration
2 North St Ste 320
Birmingham, AL 35201

Tri State Lumber
57 Milton St
Brooklyn, NY 11222-2010

YFT Construction Corp.
600 W 144th St
New York, NY 10031-5501

**Via CM/ECF electronic service**

J Ted Donovan
Goldberg Webrin Finkel Goldstein LLP
125 Park Avenue
Ste 12th Floor
New York, NY 10017

Kevin J Nash
Goldberg Webrin Finkel Goldstein LLP
125 Park Avenue, 12th Floor
New York, NY 10017

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green
Room 510
New York, NY 10004-1408

Dated this 1st day of February, 2024.

    */s/ Gregory Sanda*
    MCMICHAEL TAYLOR GRAY, LLC
    3555 Engineering Drive, Suite 260
    Peachtree Corners, GA 30092

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| In re:<br><br>1777 HOMES LLC,<br><br>                       Debtor. | Case No. 1-23-42367-jmm<br><br>Chapter 11 |

**SECURED CREDITOR'S (I) PLAN OBJECTION, AND**
**(II) MOTION FOR AN ORDER DISMISSING CHAPTER 11 CASE**

Sharestates Investments DACL, LLC ("Sharestates"), as a secured creditor and party in interest, objects to confirmation of the Debtor's plan of reorganization filed October 3, 2023 [DE 19], and pursuant to 11 U.S.C. § 1112(b) moves this Court for an order dismissing the above-captioned bankruptcy case on the grounds, *inter alia*, that Debtor filed its voluntary petition in bad faith on the eve of the auction pursuant to a judgment of foreclosure and sale, and proposed a patently unconfirmable plan of reorganization. In support of the Plan Objection and Motion to Dismiss Case, Sharestates respectfully represents the following:

**INTRODUCTION**

Sharestates object to the Plan because there is inadequate information disclosed, it is not feasible, and it was filed in bad faith. The Plan is not confirmable because the Debtor failed to file a disclosure statement as required under Fed. R. Bankr. P. 3016(b). Notwithstanding, a disclosure statement will not cure the glaring confirmation defect that the Plan is not feasible nor fair and equitable to Sharestates. Debtor has no binding financing commitment or other source of revenue to make any plan payments.

This bankruptcy case should be dismissed because the Debtor has made zero adequate protection payments, and the Plan is patently unconfirmable. The proposed plan is not

confirmable on its face under 11 U.S.C. 1129(a)(11), because it lacks feasibility.  The Debtor's restructuring is premised upon loans from an unknown investor named Yitzchok Gantz who may "potentially refinance the existing mortgage debt."  Debtor presents no contract, term sheet, or financial disclosures, so there is no reasonable way to investigate whether Debtor's claim has merit.  Further, no information is provided about Mr. Gantz or his ability to satisfy Sharestates's $2,815,372.18 judgment against the Debtor.

Absent a substantial infusion of new capital, the only way for the Debtor to confirm a plan is for Sharestates to negotiate a short payoff, which it is not willing to do.  Sharestates should be permitted to exercise its rights outside of bankruptcy, where the Debtor has no unencumbered assets to be liquidated for the benefit of unsecured creditors.  Without any appraisal, Debtor unrealistically speculates that "the fair market value of the Property *when stabilized should be close* to the amount of the outstanding mortgage, if not the entire principal balance." *See* Debtor's Declaration, ¶ 4 [DE 1] (emphasis added).  And the Debtor admits that stabilization "requires an additional $400,000 in financing to obtain certificates of occupancy and commencing marketing the units for leasing." *Id*., ¶ 2.  Accordingly, cause exists to dismiss the case under section 1112(b) of the Bankruptcy Code.

## JURISDICTION, VENUE AND STANDING

1. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and 1334(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1334 and 1409.

3. The Plan Objection and Motion to Dismiss Case are core proceedings pursuant to 28 U.S.C. § 157.

4. Sharestates has standing to bring the Motion pursuant to 11 U.S.C. § 1109(b).

## PARTIES AND BACKGROUND

5. The Debtor is operated and managed by its sole managing member and 100% owner, Yoel Perl ("Perl").

6. On May 7, 2021, Sharestates filed a commercial mortgage foreclosure lawsuit against the Debtor and Perl, among other parties, in the Supreme Court for the State of New York, Kings County, under Index Number 510868/2021 (the "Foreclosure"), to recover against the real property located at 1777 Nostrand Avenue, Brooklyn, NY 11226 (the "Mortgaged Property").

7. On April 11, 2023, the Honorable Lawrence Knipel, J.S.C., entered an *Order Confirming Referee Report and Judgment of Foreclosure and Sale* (the "Foreclosure Judgment"), in favor of Sharestates, and against the Debtor, in the amount of $2,815,372.18, plus costs of $2,932.24, and attorney's fees of $5,000.00. These amounts accrued interest at the annual note rate of 23.99% from July 1, 2022 until the Foreclosure Judgment entered on April 11, 2023, and then statutory interest at 9% from April 11, 2023 to the present. The Foreclosure Judgment also permitted the judicial sale of the Mortgaged Property. Neither the Debtor nor Perl appealed the Foreclosure Judgment, and the time to do so expired long ago.

8. A foreclosure auction was duly scheduled for July 6, 2023, and Notice of Sale was published and posted in accordance with New York law.

9. On July 5, 2023 (the "Petition Date"), the day before the foreclosure sale, the Debtor filed for Chapter 11 bankruptcy, claiming status as a single asset real estate debtor ("SARE").

10. As of the Petition Date, the Debtor owed Sharestates at least $2,815,372.18, as set forth in the Foreclosure Judgment, and such amount increases every day.

11. As security for the repayment of the indebtedness under the $2,315,000 Promissory Note which matured on January 1, 2020 (the "Note"), the Debtor executed a Mortgage, Assignment of Leases and Rents, and Security Agreement (the "Mortgage") on the real and personal property identified in Sharestates's proof of claim. *See* Claims Register, # 5-1. True and correct copies of the Note and Mortgage are attached to the proof of claim. Sharestates's Mortgage is a valid first-priority perfected lien on the Debtor's property, fully enforceable in accordance with the terms of the underlying loan documents, without defense, offset or counterclaim of any nature.

12. Since the Petition Date, Debtor has not received Court approval to use Sharestates's cash collateral or the rents, because there are no tenants.

13. The Debtor has made no adequate protection payments to Sharestates.

14. On October 3, 2023, Debtor filed its Plan of Reorganization (the "Plan") [DE 19]. The Plan contains no disclosure statement, no financial projections, and no liquidation analysis.

15. The last Monthly Operating Report filed by the Debtor was for November 2023 (the "November MOR") [DE 26]. The November MOR provides, *inter alia*, the following pertinent facts: no income or cash receipts, cash on hand of only $100.00, and no paid expenses.

16. Debtor has provided no sworn testimony, affidavits, or declaration in support of Plan confirmation.

**REQUEST FOR RELIEF**

A. **Debtor's Plan is Not Feasible**

17. Debtor has the burden of proving feasibility under 11 U.S.C. § 1129(a)(11), made applicable in this case by 11 U.S.C. § 1191(b). "Feasibility under section 1129(a)(11) is a dispositive hurdle which, if not surmounted, precludes confirmation of a plan." *In re PTM Techs,*

*Inc.*, 2013 WL 4519306, at *8 (Bankr. M.D.N.C. Aug. 26, 2013).  A court should only confirm a plan if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor … unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  Section 1129(a)(11) is commonly known as the "feasibility" requirement.  The purpose of this feasibility requirement "is to prevent confirmation of visionary schemes which promise creditors … more under a proposed plan than the debtor can possibly attain after confirmation." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (citation omitted).  This Court has an obligation to carefully review a plan to determine if it is workable. *See In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985).  While success need not be guaranteed, a plan must be supported by adequate evidence that some reasonable assurance of success exists and the debtor must demonstrate that the confirmation of the plan is not "likely" to be filed by liquidation or the need for further financial reorganization. *See In re Windwood Heights, Inc.*, 385 B.R. 832, 838 (Bankr. N.D.W. Va. 2008) (citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)).

18.    A Bankruptcy Court, in determining the feasibility of a proposed plan of reorganization, should "scrutinize" the plan to determine whether it offers a reasonable prospect of success and is workable. *See In re Dindiyal*, 1993 Bankr. LEXIS 1832, at *19 (Bankr. E.D.N.Y. Sept. 30, 1993) (citation and quotations omitted); *see also In re Etienne Estates at Wash. LLC*, 2016 Bankr. LEXIS 993, at *40 (Bankr. E.D.N.Y. Mar. 30, 2016) (concluding that debtor failed to demonstrate feasibility when it lacked funds necessary to cure a debt nor funds necessary to maintain post-confirmation debt service).

19.    Feasibility is a broad term embracing the relevant factors to a plan's success including financial projections, valuations, the debtor's performance, sources of funding, and

5

ongoing litigation. *See In re Rack Eng'g Co.*, 200 B.R. 302, 306 (Bankr. W.D. Pa. 1996). The projections regarding these factors must not be speculative, conjectural or unrealistic. *See In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006); *see also In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 46 (Bankr. D. Del. 2000) (finding lack of feasibility due to speculative asset valuation).

20. For the Plan to be feasible, the Court must find that the Debtor will be able to make all the payments under the Plan or that there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan. The Debtor acknowledges that it has no current rental income to fund the Plan, requiring it to borrow at least $400,000 from an unknown investor upon undisclosed terms to "stabilize" the Property, and hoping to receive certificates of occupancy only after significant construction is completed sometime in the future. There is no evidence to support a conclusion that any of these multiple contingencies is imminent.

21. Absent any financial projections, which alone renders the Plan unconfirmable and supports immediate case dismissal, it appears that the Debtor proposes to use speculative monthly rental income of $18,000[1] to make plan payments. The lack of concrete financial disclosures prove this amount is farcical. 100% vacancy and no certificates of occupancy at the Debtor's property render the Plan unfeasible. Debtor's predictions about its future operating income are simply not dependable given the Debtor's historical performance and the Debtor's inability to effectively manage its business affairs.

22. Similarly, the Debtor *intends to* raise financing to complete construction and to hopefully refinance the existing mortgage debt, however, no funding commitments exist today

---

[1] Debtor wildly speculates that once the nine (9) rental units at the Property receive certificates of occupancy at some unknown future date, each can be leased for approximately $2,000 per month. *See* Debtor's Declaration, ¶ 3 [DE 1].

and none have been procured during the past three years. Indeed, the Debtor has been unable to raise any financing since it defaulted and made its last payment to Sharestates on December 8, 2020 – more than three years ago! *See* Proof of Claim 5-1, Payment History. Notwithstanding the Debtor's utter failure to complete construction of the property and refinance the mortgage debt during the past three years, the Debtor's Plan provides, "the Debtor has identified a new investor, Yitzchok Gantz (the "Investor"), to *potentially* refinance the existing mortgage debt (the "Refinancing") *if terms can be reached with the Lender* following a claims reconciliation process." *See* Plan, p. 1 (emphasis added). No lender or investor has *committed* to refinance any debt and Sharestates will not accept less than 100% of its secured claim. Nothing in the record shows that the Debtor has the financial ability to make any Plan payments, let alone payments to satisfy $2.8 million in liquidated, non-contingent mortgage debt.

**B. Debtor's Plan is Not Fair and Equitable**

26. Section 1191(c)(3)(A) of the Bankruptcy Code requires that for a plan to be fair and equitable, the plan must show that the debtor is reasonably likely to be able to make the plan payments. Here, the Plan proposes paying Sharestates less than the full amount of its liquidated secured claim,[2] disputed mechanic's liens, reinstating the defaulted SBA loan, and paying $25,000 to unsecured creditors; however, no reliable financial information is provided with the Plan to show that the Debtor has the ability to make such payments. The monthly operating reports do not provide financial information demonstrating viability of the Debtor. In addition, there has been no disclosure of information establishing a binding financial commitment for member contributions, debtor-in-possession loans, or any form of refinancing.

---

[2] Debtor states that it "will likely challenge certain default interest charges sought by the Lender." *See* Plan, p. 1. Regarding the New York state court's final judgment in favor of Sharestates, the Debtor has no avenue to dispute the validity or amount and cannot collaterally attack it via this bankruptcy case.

7

C. <u>**Case Dismissal is Warranted**</u>

23. Pursuant to 11 U.S.C. § 1112(b), a bankruptcy court, upon request of a party in interest, shall dismiss a Chapter 11 bankruptcy for "cause." Bankruptcy courts have broad discretion in deciding whether to dismiss a case for cause. *See, e.g., In re Ronald Kern & Sons*, 2002 U.S. Dist. LEXIS 13884 (W.D.N.Y. 2002). "If 'cause' is established, and the Court does not find either specific unusual circumstances or the need for appointment of a Chapter 11 Trustee, the Court <u>must</u> convert or dismiss the Chapter 11 case." *In re Spencerport Dev., LLC*, 2014 Bankr. LEXIS 4909, *5 (Bankr. W.D.N.Y. 2014) (emphasis in original).

24. Section 1112(b) of the Bankruptcy Code includes a non-exhaustive list of what may constitute "cause" for dismissal of a Chapter 11 bankruptcy. *See In re State Street Assoc., L.P.*, 348 B.R. 627, 639 (Bankr. N.D.N.Y. 2006) (noting in pre-BAPCPA case that amended section 1112(b) contains non-exclusive factors to be considered in determining whether cause exists to dismiss a case). A party need not demonstrate that all the elements of "cause" can be met. *See In re TCR of Denver, LLC*, 338 B.R. 494, 500 (Bankr. D. Colo. 2006). The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. *In re The 1031 Tax Group, LLC*, 375 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). Sharestates contends cause for dismissal of the instant bankruptcy case exists under 11 U.S.C. § 1112(b)'s inherent requirement of good faith.

D. <u>**Debtor's Lack of Good Faith**</u>

25. It is well settled law in the Second Circuit and in several other circuits that lack of good faith, or the existence of bad faith in commencing or prosecuting a bankruptcy case is "cause" for dismissing a bankruptcy case pursuant to Section 1112(b) of the Bankruptcy Code. A bankruptcy court may dismiss a chapter 11 case for lack of good faith, as "the requirement of good faith has been held to be an implicit condition to the filing and maintenance of a

8

bankruptcy case for over a century." 7-112 COLLIER ON BANKRUPTCY P. 1112.07; *see also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 (5th Cir. 1986) ("every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings"). The Second Circuit has summarized certain factors of bad faith as follows:

1) The debtor has only one asset;
2) The debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors;
3) The debtor's one asset is the subject of a foreclosure action because of arrearages or default on the debt;
4) The debtor's financial condition is, in essence a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
6) The debtor has little or no cash flow;
7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
8) The debtor has no employees.

*See C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997); *see also In re 68 West 127 Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002). It is settled in this circuit that "[c]ause for dismissal may be found based on unenumerated factors, including 'bad faith.'" *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003) (citing *C-TC*, 113 F.3d at 1310).

26. Most of these "bad faith" factors apply to the Debtor. The Debtor's history as a filer in the eleventh hour to prevent a foreclosure sale evidences intent to delay or frustrate the legitimate efforts of Sharestates to enforce its rights. With neither employees nor revenue, the Debtor has only a single incomplete 9-unit rental property, with no certificates of occupancy, as a single real estate project. The Debtor has few unsecured creditors, whose claims are small in

relation to those of the secured creditors. Indeed, the non-insider, unsecured debt is insignificant relative to the debt owed to Sharestates, and the Debtor's sole asset is the subject of foreclosure proceedings filed by Sharestates caused by Debtor's defaults on Sharestates' loan.

27. The Debtor's primary financial problem is a two-party dispute between the Debtor and Sharestates, which can be resolved in the pending state foreclosure action. Despite the existing forum in Supreme Court (Kings County), the Debtor has chosen the Bankruptcy Court as its new venue to attempt to restructure its debt owed to Sharestates.

28. The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditor to enforce its rights. Notably, Debtor waited to file a voluntary petition, and did so strategically on the eve of foreclosure sale to prevent the imminent sale of its property. This scheming plan of action is the epitome of bad faith. The thing that cannot be lost here is that for three years the Debtor and Mr. Perl have been unable to refinance the Sharestates commercial debt.

29. The Debtor has no cash flow and cannot meet current expenses including the payment of real estate taxes, utilities, repairs and maintenance, and adequate protection payments.

30. Applying the facts of this case to the bad faith factors itemized above demonstrates cause exists to dismiss the bankruptcy case. The Debtor is not viable; employed unfair litigation tactics by filing this bankruptcy case to stall a pending foreclosure case, and it continues to have no legitimate means of rehabilitation. *See In re Asbridge*, 61 B.R. 97, 102 (Bankr. D. N.D. 1986) ("a lack of good faith exists where at the outset; the debtor is not a viable economic entity and it is obvious that the petition was filed for the sole purpose of frustrating and delaying legitimate efforts of secured creditors to enforce their rights"). In a set of facts like

here, the Debtor in *Southern Communities* held an asset that was already involved in a foreclosure action, and the company was not economically sustainable, as it could not generate sufficient cash flow to service its mortgages or sustain operating expenses. 57 B.R. 215 (Bankr. M.D. Fla. 1986). The court dismissed the bankruptcy for cause and reasoned that "one need not engage postulating to conclude that by some magic all of a sudden this frog will turn into a prince and will be ready to proceed toward a fruitful economic life." *Southern Communities*, 57 B.R. at 218. *See also In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is not a potential business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre ….") (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)); *In re Éclair Bakery Ltd.*, 255 B.R. 121, 137-38 (Bankr. S.D.N.Y. 2000).

31. Dismissal of this bankruptcy case is in the best interests of creditors and the estate. Exceptions provided by 11 U.S.C. § 1112(b)(1) or (b)(2) do not apply in this case. Here, no party in interest has requested the appointment of a Chapter 11 Trustee and no "unusual circumstances" exist establishing that dismissing the case is not in the best interests of creditors and the estate. *See In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007) (after the movant shows cause, the burden shifts to the debtor to prove that there are unusual circumstances under section 1112(b)(2)). There are no unusual circumstances in this case that establish dismissal is not in the best interests of the creditors and the estate. The Debtor's financial history is a pattern of steady decline.

32. Allowing the Debtor to continue these practices under the protection of Chapter 11 will result in continued loss to or diminution of the estate. The record before the Court

reflects the absence of a reasonable likelihood of rehabilitation. The Debtor has no unencumbered assets to be liquidated for the benefit of unsecured creditors. The secured creditors can exercise their rights outside of bankruptcy. Therefore, the Court should dismiss the case.

**WHEREFORE**, Sharestates Investments DACL, LLC respectfully requests that this Court issue an Order denying Plan confirmation and dismissing the bankruptcy case pursuant to 11 U.S.C. § 1112(b), and grant such other and further relief as the Court deems just and proper.

Dated: December 22, 2023
Saratoga Springs, New York

          By: */s/ Gregory Sanda*
          Gregory Sanda, NYBN 4446340
          Andrew Kamensky, NYBN 4963757
          MCMICHAEL TAYLOR GRAY, LLC
          3550 Engineering Drive, Suite 260
          Peachtree Corners, GA 30092
          Telephone: (404) 474-7149
          Facsimile: (404) 745-8121
          gsanda@mtglaw.com
          akamensky@mtglaw.com
          *Attorneys for Sharestates Investments DACL, LLC*