UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                              Chapter 11

1777 Homes LLC,                                                           Case No. 23-42367-JMM

                                          Debtor.
---------------------------------------------------------------x

**DEBTOR'S MOTION TO APPROVE STALKING HORSE CONTRACT WITH RELATED BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS**

      1777 Homes LLC (the "Debtor") hereby moves (the "Motion") for entry of an order (i) approving (a) a proposed contract (the "Stalking Horse Contract") for the sale of the Debtor's real property located at 1777 Nostrand Avenue, Brooklyn, NY (the "Property") to Cube 4 Equities LLC (the "Stalking Horse Bidder") for the sum of $1,250,000, free and clear of all claims, liens and interests pursuant to 11 U.S.C. § 363(b) and (f) and applicable Bankruptcy Rules; and (ii) approving proposed bidding procedures relating to the solicitation of higher and better offers for the Property. Copies of the Stalking Horse Contract and proposed bidding procedures are annexed hereto as Exhibits "A" and "B", respectively. In support of this Motion, the Debtor respectfully represents the following:

**Background**

      1.     The Debtor filed a voluntary Chapter 11 petition on July 5, 2023 and remains in possession and control of its assets as a Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

      2.     The Debtor's sole asset is the Property, which was acquired in 2018 with a view toward constructing nine (9) residential units (primarily one-bedroom apartments).

3. Despite Covid-19 related delays and cost overruns, the Property is substantially built but requires an additional $400,000 in financing to obtain certificates of occupancy and commencing marketing the units for leasing.

4. The Property is subject to a first mortgage lien in the original principal amount of $2,315,000 currently held by Sharestates Investments DACL LLC (the "Lender"), which obtained a pre-petition judgment of foreclosure and sale on April 11, 2023 in the amount of $2,815,372.78.

5. The Property is also subject to secured claims from New York City for real estate taxes and water in the aggregate amount of approximately $111,600. The SBA holds a lien on the Debtor's personal property securing a loan in the amount of $165,996. Although no proofs of unsecured claims were timely filed, the Debtor scheduled some $268,000 in disputed claims of contractors.

6. The Debtor filed its Chapter 11 petition in an effort to protect the Property from foreclosure while it tried to find a new investor to fund completion of construction or, alternatively, a third-party buyer for the Property. After a series of false starts and unfortunate setbacks in the Debtor's efforts to generate investor funds the Debtor has received the signed Stalking Horse Contract. Accordingly, the Debtor now moves to approve the Stalking Horse Contract, which the Debtor will seek to use to solicit higher and better offers under an anticipated robust marketing and auction process. In furtherance of the auction process, simultaneously with this motion the Debtor is filing a separate motion to retain Northgate Real Estate Group ("Northgate") to act as broker.

7. The Debtor intends to solicit all cash offers for the Property, subject to the Stalking Horse Contract and credit bid rights held by the Lender. The net proceeds of the sales after payment of real estate taxes, brokerage, and customary and usual closing costs will be used to fund

a plan. The precise terms of the plan, including a carve out for administrative expenses priority claims, and general unsecured claims are the subject of negotiations to be had with the Lender during the marketing period. It is anticipated that the plan will be filed in time to complete the confirmation process prior to the closings on the respective sales, so as to preserve the transfer tax exemptions under Section 1146(a) of the Bankruptcy Code.

### Jurisdiction and Venue

8. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

9. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested herein are Section 363(b) and (f) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure Code.

### The Stalking Horse Contract

11. This Motion is focused on proceeding with a marketing and auction process with the Stalking Horse Contract in hand, subject to one modification.

12. The Stalking Horse Contract contains a provision for the recognition of a 3% Break-Up Fee to be paid in the event the Property is sold to a purchaser other than the Stalking Horse Bidder, including any credit bid by the Lender. Following discussions with the Lender, the Stalking Horse Bidder has agreed to withdraw its request for a Break-Up Fee, and consents to the deletion of the provisions relating to same from the Stalking Horse Contract.

13. The Debtor submits that the Court should accept the proposed Stalking Horse Contract, subject to the modification eliminating the Break-Up Fee. While the total purchase price is insufficient to satisfy the secured mortgage lien held by the Lender, it represents a significant

pay-down of the mortgage debt and will allow the Debtor to maximize the value of this non-income producing Property. The Debtor believes that the Stalking Horse Contract represents a significant starting point for a sale and a solid base line to build upon by further marketing. Thus, the proposed sale process is designed to maximize the recovery for the Property and insure that the final sale price represents the going concern value of the Property, rather than proceeding with a distressed liquidation at a foreclosure sale.

## **Extraordinary Sale Provisions**

14. The Debtor addresses potential Extraordinary Provisions *seriatim*:

   a. Auction Sales – The Property will be marketed for sale, and offered for sale at auction.

   b. No Sale to Insider – This is an open sale process. There is no relationship between the Debtor and the Stalking Horse Bidder or its principals.

   c. Due Diligence –The Stalking Horse Contract is not subject to any due diligence requirement.

   d. No Private Sale – The Property is being sold at auction upon receipt of a qualified competing bid.

   e. Notice – No notice limitations are contemplated.

   f. Good Faith Deposit –The Stalking Horse Contract includes a ten (10%) percent deposit, which is being held by counsel to the Stalking Horse Bidder.

   g. Interim Arrangements with the Stalking Horse – There are no interim arrangements.

   h. Use of Proceeds – The sale proceeds are expected to be distributed through a Chapter 11 plan of reorganization, to be filed shortly, with confirmation to be pursued contemporaneously with the auction process.

   i. Tax Exemption – It is contemplated that the closing will be implemented through the Chapter 11 plan of reorganization, making the transfer of the Property eligible for exemption from state and local transfer taxes.

   j. Record Retention – The Debtor shall retain all of its books and records.

k.  No Sale of Avoidance Actions – The sale does not include any Chapter 5 avoidance actions.

l.  Requested Findings – The Debtor shall seek the sale of the Property free and clear of all claims, liens, taxes and non-permitted encumbrances.

m.  Future Conduct – Not applicable.

n.  Requested Findings as to Fraudulent Conveyances – The Debtor does not seek a finding that the sale will not constitute a fraudulent conveyance.

o.  Relief from Bankruptcy Rule 6004(h) – The Debtor intends to seek relief from the fourteen-day stay imposed by Rule 6004(h) so that the sale can close promptly following approval of the auction results.

p.  Broker – The Debtor is seeking to retain Northgate as real estate broker to conduct the auction with respect to the Property.

q.  Break-Up Fee – The provisions in the Stalking Horse Contract have been eliminated.

**The Bid Procedures**

15. The Debtor seeks approval of the attached bidding procedures to be used in conducting the auction of the Property. The bidding procedures are standard and customary, and have been reviewed by the Lender and the proposed broker.

### A. The Sale Should Be Approved

#### 1. The Proposed Sale is an Exercise of Sound Business Judgment and Should Be Approved

16. The Debtor submits that ample authority exists for the approval of the sale of the Property. Although Section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts have held that approval of a proposed sale of property pursuant to Section 363(b) is appropriate if the transaction represents the reasonable business judgment of the debtor. *See Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *see also In re Delaware & Hudson Ry.*

*Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying the pre-confirmation sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

17. If a valid business justification exists for the sale, as it does in this case, the Debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc., supra*, 147 B.R. at 656. Therefore, parties objecting to the Debtor's proposed sale must make a showing of "bad faith, self-interest or gross negligence." *Id*. at 656; *see also In re Johns-Manville Corp., supra*, 60 B.R. at 616 ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from decisions made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

18. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See, e.g., In re Delaware & Hudson Ry. Co*., supra, 124 B.R. at 176; *In re Phoenix Steel Corp.*, *supra*, 82 B.R. at 335–36. The proposed sale satisfies all these factors.

19. <u>First</u>, at this point, the best path forward in Chapter 11 is a sale of the Property using the Stalking Horse Contract as a starting point to try to generate higher and better offers, as opposed to returning to State Court for a distressed foreclosure sale.

20. <u>Second</u>, all creditors of the Debtor will receive notice of this Motion and will have the opportunity to be heard on any matter relating to the proposed sale and bidding procedures, including the treatment of credit bid rights.

21. <u>Third</u>, the value the Debtor will receive for the Property will reflect current market conditions, as the Stalking Horse Contract is the product of arms-length negotiations and the final sale price will be determined through a competitive and arms' length auction process.

22. <u>Fourth</u>, the Debtor opted for Chapter 11 relief in good faith with the goal of obtaining the best possible price for the Property.

### 2. **The Proposed Sale Should Be Free and Clear**

23. The Debtor also submits that it is appropriate to sell the Property free and clear of all claims, taxes, liens, and non-permitted encumbrances, pursuant to Section 363(f) of the Bankruptcy Code, which authorizes a trustee or debtor-in-possession to sell assets free and clear of liens, claims and interests if:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;
> (2) if such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24. Because Section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Debtor's Property "free and clear" of claims, taxes, liens and non-permitted encumbrances. *See Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n. 24 (6th Cir. 1991) (stating that Section 363(f) is written in the disjunctive; holding that the court may approve the

sale "free and clear" provided at least one of the subsections of section 363(f) is met); *In re Dundee Equity Corp.*, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."). The Lender has already advised the Court that it supports the proposed auction sale process based upon the approval of the Stalking Horse Contract, meeting the requirements of Section 363(f).

### 3.  **Waiver of Stay Under Bankruptcy Rule 6004(h)**

25. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Any delay in the Debtor's ability to consummate the Sale would be detrimental to the Debtor, its creditors and estate, and would impair the Debtor's ability to maximize value in the Property through an expeditious closing of the Sale. For this reason, the Debtor submits that cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h).

WHEREFORE, the Debtor respectfully requests that the Court enter an Order approving the Stalking Horse Contract, together with the proposed break-up fee, and approve the proposed sale process, including the Bidding Procedures, together with such other and further relief as is just and proper.

Dated: New York, New York
April 29, 2024

                                Goldberg Weprin Finkel Goldstein LLP
                                Counsel for the Debtor
                                125 Park Avenue, 12th Floor
                                New York, NY 10017
                                (212) 221-5700

                                By:    /s/ J. Ted Donovan, Esq.